[Cite as *Weiler v. DLR Group*, 2023-Ohio-1221.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

SHAWN WEILER,                               :

    Plaintiff-Appellant,        :

    v.                          :               No. 112091

DLR GROUP, A NEBRASKA CORP.,      :
ET AL.,

    Defendants-Appellees.       :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 13, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-22-964279

---

### *Appearances:*

Shawn Weiler, *pro se*.

A. Steven Dever Co., L.P.A., and A. Steven Dever, *for appellees*.

SEAN C. GALLAGHER, J.:

{¶ 1} This cause came to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Loc.App.R. 11.1. Shawn Weiler appeals the dismissal of his action

based on the failure to state a claim upon which relief could be granted. For the following reasons, the trial court's judgment dismissing the action is affirmed.

{¶ 2} Weiler filed a complaint advancing two claims for tortious interference with a business relationship: DLR Group, Inc., headquartered in Omaha, Nebraska, interfered with Weiler's employment with Osborn Engineering Company; and DLR Group also interfered with his attempts to thereafter secure a new job. As is relevant to the discussion of Weiler's allegations, there are five elements to a tortious interference claim: "(1) [the existence of] a business relationship or contract; (2) the defendant's knowledge of the relationship or contract; (3) the defendant's intentional or improper action taken to prevent a contract formation, procure a contractual breach, or terminate a business relationship; (4) a lack of privilege; and (5) resulting damages." *Woods v. Sharkin*, 2022-Ohio-1949, 192 N.E.3d 1174, ¶ 90 (8th Dist.). Any claim for tortious interference requires allegations of an improper act or conduct. *Id.*, citing *Syed v. Poulos*, 8th Dist. Cuyahoga Nos. 103137 and 103499, 2016-Ohio-3168, ¶ 17, and *Baseball at Trotwood, L.L.C. v. Dayton Professional Baseball Club*, S.D.Ohio No. C-3-98-260, 2003 U.S. Dist. LEXIS 27460 (Sept. 2, 2003). In order to present a cognizable claim for relief, a plaintiff must include allegations of fact supporting each element of the tort claim.

{¶ 3} According to Weiler's allegations, Weiler worked for Westlake Reed Leskosky ("WRL") in 2016, when it was acquired by DLR Group. It is unclear whether WRL is a subsidiary of DLR Group or was subsumed into DLR Group as

part of the referenced acquisition. DLR Group outsourced services to Osborn on one occasion during the relevant time frame. At one point, Weiler remembered a conversation in which his manager at DLR Group stated that "upsetting an architect would be [a] 'very career limiting decision.'" Weiler's manager later approached Weiler, inquiring about prospective candidates who had submitted résumés. Weiler told his manager he did not have any information about those candidates. DLR Group terminated Weiler's employment in April 2017.

{¶ 4} Approximately a month later, Osborn hired Weiler.[1] Over a year after being hired at Osborn, Weiler sent an email addressed to "many employees" at WRL. He attached a copy of the email to his complaint, the copy of which was reproduced over two print pages, redacting all but two partial sentences: "Hello WRL employees, [. . .] [t]ime passed and I started a new job at The Osborn Engineering Company. In a last ditch[. . . .]"[2] Weiler did not explain the reason for, or the contents of, the email. In response to the email, an architect employed by DLR Group contacted an individual at Osborn expressing anger at its contents and

---

[1] Weiler filed a separate action against Osborn in CV-22-964282 advancing similar allegations as raised in the underlying action. Based on a different procedural posture, the dismissal was reversed in *Weiler v. Osborn*, 8th Dist. Cuyahoga No. 112023, 2023-Ohio-619. Weiler did not disclose the related proceeding to either this court or the trial court.

[2] An email bearing the same date and including the same phrases was discussed in greater detail in *Weiler v. C.L.*, 8th Dist. Cuyahoga No. 111657, 2022-Ohio-4212, ¶ 9, a case involving Weiler's employment at WRL from May 2016 through April 2017 and detailing allegations of Weiler's harassment of a coworker from his perspective. *See also C.L. v. Weiler*, 8th Dist. Cuyahoga No. 111474, 2023-Ohio-13, (affirming the order of contempt entered against Weiler for violating the terms of a protection order entered in favor of the coworker).

"threatening economic consequences." Weiler was informed of the conversation, and Osborn terminated Weiler's employment "for cause." A copy of the termination letter was also attached to the complaint. Other than the timing of the events, there are no allegations tying Weiler's termination for cause to the threat of "economic consequences" referenced in the complaint.[3]

{¶ 5} After losing his job with Osborn in June 2018, Weiler listed DLR Group and WRL as previous employers on his résumé. He was able to secure a new position four months after leaving Osborn. Although gainfully employed, Weiler continued looking for other opportunities. In March 2020, Weiler was offered a position with an unidentified company. A month after rejecting the other offer, he lost his job.

{¶ 6} Weiler started a new position in October 2020, but was terminated the following December. Weiler continued his job search using pseudonyms for "some of his prior employers." It is unclear whether that included DLR Group or WRL. The allegations do not provide that context. It is Weiler's understanding, based on a conversation he had with a "close relative" who was a "co-owner in a business in the fall of 2020," that potential employers contact a job applicant's previous employer during an application process. After securing a telephone interview with an unidentified prospective employer, Weiler provided the

---

[3] In general terms, appellate review typically focuses on the operative pleading, which in this case is the amended complaint. As will become apparent, discussing the complaint as originally filed, which was superseded by the amended complaint, is relevant to the allegations against DLR Group and Weiler's motion for default judgment.

interviewer with the actual names of those prior employers whose identity was previously hidden. It is unclear which of his prior employers' names were then revealed. Weiler was not offered that position.

{¶ 7} Based on those allegations in the complaint, Weiler claimed that DLR Group, ostensibly through its employees, tortiously interfered with Weiler's employment at Osborn and thereafter interfered with all of Weiler's prospective employment opportunities.

{¶ 8} DLR Group timely answered the allegations with general denials. After DLR Group filed its answer, 28 days later as a matter of fact, Weiler filed an amended complaint adding two additional parties to the action: Griff Davenport, a resident of Minneapolis, Minnesota, and Paul Westlake, a resident of Cleveland, Ohio. Davenport is alleged to be the CEO of DLR Group and Westlake the managing principal of WRL.

{¶ 9} The amended complaint also provided insight into the redacted email referenced earlier. According to the amended complaint, the email "related public — with regards to the company — actions of Davenport which might have indicated criminal behavior" and further accused Westlake of unspecified "criminal behavior." Three days after Weiler sent the email, Westlake, the architect at DLR Group generically referenced in the complaint, was alleged to have threatened Osborn with unspecified "consequences," the foundation of the first tortious interference claim. Davenport, also as an employee of DLR Group, is alleged to have damaged Weiler's reputation, which impeded Weiler's job search, the foundation of the second

tortious interference claim. Importantly, the new pleading did not impact the allegations against DLR Group but merely clarified the parties acting on behalf of DLR Group.

{¶ 10} On August 26, 2022, Weiler filed a motion for default judgment against DLR Group based on its failure to file an answer to the amended complaint within 14 days, as required under Civ.R. 15(A).[4] DLR Group filed a brief in opposition, seeking to strike the amended complaint or to permit the belated filing of a responsive pleading. The same day, all three defendants jointly filed a motion for judgment on the pleadings, asking for the case to be dismissed for the failure to state a claim upon which relief could be granted under Civ.R. 12(B)(6).[5]

{¶ 11} After granting Weiler leave to file an amended complaint, the trial court granted the motion to dismiss, which was unopposed, concluding that the amended complaint was "comprised of legal conclusions and is unsupported by any factual allegations sufficient to raise a right to relief," citing *Tuleta v. Med. Mut. of Ohio*, 2014-Ohio-396, 6 N.E.3d 106, ¶ 56 (8th Dist.). Weiler timely appealed, advancing four assignments of error.

---

[4] Because Davenport and Westlake were new party defendants, their responses were due 28 days following service of the amended complaint. Civ.R. 12(A).

[5] Although the DLR Group sought leave to file an answer to the amended complaint and attached a copy of the answer to the motion for leave to file an answer instanter, the trial court deemed that motion moot after considering the Civ.R. 12(B)(6) defense asserted in the defendants' motion for judgment on the pleadings. Thus, it appears the motion for judgment on the pleadings should have been simply captioned as a motion to dismiss. The difference between a motion to dismiss and a motion for judgment on the pleadings is not relevant to the merits of the claims advanced and discussed in this appeal.

{¶ 12} In the first assignment of error, Weiler claims the trial court erred by granting him leave to amend his complaint because leave was not required under Civ.R. 15(A). Weiler is correct to a certain extent, but that does not entitle him to any relief.

{¶ 13} There are three procedural mechanisms available to file an amended complaint once an answer is filed. *See* Civ.R. 15(A). A "party may amend its pleading once as a matter of course * * * if the pleading is one to which a responsive pleading is required within twenty-eight days *after service of a responsive pleading* * * *." (Emphasis added.) Civ.R. 15(A); *see also* Staff Notes for July 1, 2013 amendment ("Rule 15(A) is amended to allow amendment without leave of court of a complaint, or other pleading requiring a responsive pleading, for a period of 28 days after the service of a responsive pleading or motion"); *Hunter v. Shield*, 10th Dist. Franklin No. 18AP-244, 2019-Ohio-1422, ¶ 13. Outside of that 28-day window, the plaintiff must either seek written consent from the opposing party or request leave of court to amend the pleading. *Hunter* at ¶ 13-14. An amended complaint, once properly filed, supersedes the preceding ones. *Fried v. Friends of Breakthrough Schools*, 8th Dist. Cuyahoga No. 108766, 2020-Ohio-4215, ¶ 12, citing *Morris v. Morris*, 189 Ohio App.3d 608, 2010-Ohio-4750, 939 N.E.2d 928, ¶ 32 (10th Dist.) (applying the proposition of law that an amended pleading supersedes the original pleading). In this case, the amended complaint was filed within 28 days of DLR Group's answer being served.

{¶ 14} Thus, Weiler has a point; leave may not have been required to file the amended pleading at the time it was filed. Regardless of how the amended complaint became the operative pleading, however, the trial court considered the allegations contained within the four corners of the amended complaint for the purposes of resolving the motion to dismiss. It is immaterial whether the amendment occurred as a matter of right or through leave of court under Civ.R. 15(A). Either way, the amended complaint became the operative pleading as of the date it was filed and through whichever procedural path was taken. As of the filing date, the amended complaint superseded and, therefore, replaced the original complaint. Any error in the way the amended complaint was recognized, even if the existence of error is presumed for the sake of the discussion, that error would be, at best, harmless because it did not impact a substantial right. Civ.R. 61. The first assignment of error is overruled.

{¶ 15} In the second assignment of error, Weiler claims the trial court erred in granting the motion for judgment on the pleadings because the trial court's conclusion, that the amended complaint failed to include allegations of operative facts in support of the elements of the tortious interference claims, "was false." On this point, Weiler relies on *Tuleta,* 2014-Ohio-396, 6 N.E.3d 106 (8th Dist.), and the

concept of notice pleading — claiming that the factual allegations in the complaint were sufficient to present a prima facie case to survive the motion to dismiss.[6]

{¶ 16} Dismissals under Civ.R. 12 are reviewed de novo. *Weiler v. Technipower Inc.*, 8th Dist. Cuyahoga No. 111729, 2023-Ohio-465, ¶ 11. Under Civ.R. 12(C), "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." The defense of failure to state a claim under Civ.R. 12(B)(6) may be made within a motion for judgment on the pleadings or through a stand-alone motion to dismiss. Civ.R. 12(H). A motion to dismiss for failure to state a claim upon which relief can be granted, whether the defense is advanced through a motion to dismiss or a motion for judgment on the pleadings, is procedural and tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 605 N.E.2d 378 (1992). Appellate courts accept all factual allegations of the complaint as true, and all reasonable inferences must be drawn in favor of the nonmoving party. *Byrd v.*

---

[6] Weiler failed to file a brief in opposition to the motion for judgment on the pleadings, and as a result, it could be said that he has forfeited all but plain error for any arguments challenging the trial court's decision granting the motion to dismiss. *Ohio Power Co. v. Burns*, Slip Opinion No. 2022-Ohio-4713, ¶ 40 (arguments not presented to the trial court before it resolves the issue presented for review are forfeited for appellate review, except if the appellant can demonstrate the existence of plain error), citing *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15, and *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121-122, 679 N.E.2d 1099 (1997); *see also Tye v. Beausay*, 2020-Ohio-3746, 156 N.E.3d 331, ¶ 77 (2d Dist.), quoting *USA Freight, L.L.C. v. CBS Outdoor Group, Inc.*, 2d Dist. Montgomery No. 26425, 2015-Ohio-1474, ¶ 21, and *Rodger v. McDonald's Restaurants of Ohio, Inc.*, 8 Ohio App.3d 256, 258, 456 N.E.2d 1262 (8th Dist.1982), fn. 7. Weiler's forfeiture of the arguments in defense of his claims, however, was not presented as a basis to affirm. For this reason, the merits of the argument as presented must be discussed. *See Quarterman* at ¶ 19.

*Faber*, 57 Ohio St.3d 56, 565 N.E.2d 584 (1991). A complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975); *Doe v. Greenville City Schools*, Slip Opinion No. 2022-Ohio-4618, ¶ 8. Thus, in reviewing the dismissal of a complaint under Civ.R. 12(B)(6), whether advanced as a motion to dismiss under Civ.R. 12(B)(6) or as applied through Civ.R. 12(C), it must be determined whether the plaintiff alleged "sufficient operative facts to support this claim." *Tuleta* at ¶ 36.

{¶ 17} As has already been mentioned, the elements of a tortious interference tort claim are "(1) a business relationship or contract; (2) the defendant's knowledge of the relationship or contract; (3) the defendant's intentional or improper action taken to prevent a contract formation, procure a contractual breach, or terminate a business relationship; (4) a lack of privilege; and (5) resulting damages." *Woods*, 2022-Ohio-1949, 192 N.E.3d 1174, at ¶ 90 (8th Dist.).

{¶ 18} There are two independent tortious interference claims presented in the amended complaint: interference with an existing business relationship (Weiler's employment with Osborn) and interference with prospective business relationships (Weiler's attempts to seek employment after his position was terminated by Osborn). With respect to the latter claim, Weiler alleges that Davenport, as an employee of DLR Group, interfered in Weiler's job search through

damaging his reputation. Weiler, however, failed to identify the existence of any specific prospective business relationships that were prevented based on Davenport's conduct.

{¶ 19} In order to substantiate a claim for tortious interference with a prospective business relationship or contract, a plaintiff must include allegations of fact demonstrating the existence of "an actual prospective contractual relation" that but for the interference, would have been consummated. *One Energy Ents., LLC v. Ohio DOT*, 10th Dist. Franklin No. 17AP-829, 2019-Ohio-359, ¶ 75 (string citing case authority); *see also Emanuel's LLC v. Restore Marietta, Inc.*, 4th Dist. Washington No. 22CA6, 2023-Ohio-147, ¶ 23, citing *Wilkey v. Hull*, 366 Fed.Appx. 634, 638 (6th Cir.2010). "A vague assertion that a party interfered with certain unspecified business relationships is insufficient to state a claim for tortious interference with a business relationship." *Emanuel's LLC* at ¶ 23. Weiler has not presented any allegations that demonstrate the existence of a prospective employment opportunity that would have been entered but for the tortious conduct of Davenport and DLR Group. The amended complaint is limited to a conclusion that his unsuccessful job search was a result of Davenport ruining Weiler's reputation based on Weiler's belief that prospective employers may have contacted Weiler's previous employers.

{¶ 20} That vague and conclusory allegation is insufficient to establish a claim for tortious interference with prospective business relationships. Weiler failed to include allegations identifying the existence of any specific, prospective business relationships that would have been entered but for the alleged interference.

{¶ 21} With respect to the tortious conduct related to Westlake's alleged interference with Weiler's employment at Osborn, the allegations are similarly limited. Westlake obtained knowledge of Weiler's employment relationship with Osborn through the email accusing Westlake of criminal behavior, and according to Weiler, Westlake thereafter caused Osborn to "maliciously" terminate his employment. That naked assertion is not based on any factual allegations, and accordingly, such a conclusion is not sufficient to demonstrate a claim of tortious interference with a business relationship or contract. *Tuleta*, 2014-Ohio-396, 6 N.E.3d 106, at ¶ 36 (8th Dist.).

{¶ 22} On this claim, the factual allegations as set forth in the amended complaint are limited to Westlake calling an unidentified person at Osborn, threatening Osborn with unidentified "consequences," and expressing "how upset" Westlake was over Weiler's email that had accused Westlake of "criminal behavior." None of those allegations, even when accepted as true, demonstrate that Westlake intended Osborn to terminate or otherwise interfere with Weiler's employment to avoid imposition of the unspecified consequences or that Westlake lacked any privilege to discuss the matter with an Osborn employee.

{¶ 23} The amended complaint does not contain allegations of fact supporting each element of a tortious interference claim, and as a result, those allegations are not sufficient to survive a motion to dismiss for failure to state a claim under Civ.R. 12(B)(6). Without allegations of operative facts in support of each element of a tort claim, the action is properly dismissed. *See id.* at ¶ 42, 46, 51, and

57. Accordingly, it cannot be concluded that the trial court erred in granting the motion to dismiss the amended complaint. The second assignment of error is overruled.

{¶ 24} In the last two assignments of error, Weiler claims the trial court erred in deeming his motion for default and DLR Group's motion to strike the amended complaint as being moot following the dismissal of the case. As a matter of course, Weiler lacks standing to contest the trial court's decision deeming DLR Group's motion moot. No more need be said on that point.

{¶ 25} Even if deeming Weiler's motion for default moot was construed as denying him the relief requested, a trial court has discretion to grant or deny a motion for default judgment. *533 Short N. LLC v. Zwerin*, 10th Dist. Franklin No. 14AP-1016, 2015-Ohio-4040, ¶ 50, citing *Zuljevic v. Midland-Ross Corp., Unitcast Div.*, 62 Ohio St.2d 116, 119, 403 N.E.2d 986 (1980), fn. 2. "Under Civ.R. 55(A), a default judgment is only proper when a party has 'failed to plead or otherwise defend.'" *Miranda v. Saratoga Diagnostics*, 2012-Ohio-2633, 972 N.E.2d 145, ¶ 28 (8th Dist.), quoting *Chase Manhattan Automotive Fin. Corp. v. Glass*, 11th Dist. Trumbull No. 2000-T-0090, 2001 Ohio App. LEXIS 3187, 2001 WL 799875, *1 (July 13, 2001).

{¶ 26} DLR Group did not fail to plead or otherwise defend the action initiated by Weiler. An answer was filed to the original complaint, which contained the same operative facts and allegations as advanced against DLR Group in the amended complaint. The amended complaint solely added two additional parties

and offered clarification with respect to some of the general allegations. In addition, a motion for leave to file a belated answer was pending along with the motion for default. In light of the procedural circumstances and the affirmance of the decision dismissing the case based on the deficiencies within the amended complaint, it cannot be concluded that the trial court abused its discretion by declaring the motion for default as being moot based on the trial court's resolution of the case.

{¶ 27} The final two assignments of error are overruled.

{¶ 28} The decision of the trial court is affirmed.

It is ordered that appellees recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

EILEEN A. GALLAGHER, P.J., and
MARY J. BOYLE, J., CONCUR